THE PEOPLE'S LAW FIRM, PLC
Stephen D. Benedetto (Ariz. Bar No. 022349)
645 North 4th Avenue, Suite A
Phoenix, Arizona 85003
Telephone: (602) 456-1901
Facsimile: (602) 801-2834
admin@the-plf.com

*Attorneys for Plaintiff William Gavin*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| William Gavin,<br><br>            Plaintiff,<br><br>   v.<br><br>Maricopa County, and,<br>Melanie Kuhn (#2182h),<br><br>            Defendants. | Case No.<br><br><br>Complaint |

Plaintiff William Gavin, for his Complaint against Defendants Maricopa County and nurse practitioner Melanie Kuhn (#2182h), hereby alleges as follows:

**PARTIES, JURISDICTION AND VENUE**

1. Plaintiff William Gavin is currently an inmate in the Arizona Department of Corrections, housed in Red Rock Correctional Center, in Eloy, Arizona.  This matter arose out of Plaintiff's time as a pretrial detainee in the Maricopa County Jail.

2. Defendant Maricopa County is a political subdivision of the State of Arizona that operates the jail system known as the Maricopa County Jail.  The County operates a law enforcement agency known as the Maricopa County Sheriff's Office ("MCSO") that administers the jail system, and a healthcare provider known as Correctional Health Services ("CHS") that employs medical professionals providing healthcare in the jails.

3. Defendant Melanie Kuhn is a medical professional, upon information and belief a nurse practitioner/physician assistant, who was working for Maricopa County Correctional Health Services at all times relevant to this Complaint.

4. Jurisdiction is founded upon 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), (4), and 42 U.S.C. § 1983.

5. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that the acts and omissions that give rise to this action occurred within this District and this Court otherwise has jurisdiction.

6. This case presents an actual case in controversy arising under the Fourteenth Amendment to the United States Constitution, and under the provisions of 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

7. In May 2022, Plaintiff was involved in a rear-end motor vehicle collision and suffered an injury to his back.

8. Plaintiff was actively treating his injury at a medical provider through the summer of 2022.

9. On or about August 4, 2022, Plaintiff was arrested and booked into the Maricopa County Jail.

10. Shortly after being booked into jail, Plaintiff began experiencing cramping in his right calf muscle, numbness down his right leg, and numbness and pain in his right foot.

11. Plaintiff's right foot began to swell significantly and Plaintiff made a request for medical treatment with CHS staff.

12. In response to his request for care, Plaintiff was seen by Defendant Melanie Kuhn, a nurse practitioner/physician assistant for CHS.

13. During his visit with Ms. Kuhn Plaintiff complained of his severe pain, numbness, and swelling to his right foot and Ms. Kuhn did not provide any care that addressed his complaints.

14. Ms. Kuhn was dismissive of Plaintiff's complaints, responded "I went to school for 8 years, I don't need an anatomy lesson" when Plaintiff attempted to explain the exact nature of his injury, and instructed a detention officer to return Plaintiff to his housing unit.

15. Over the following days Plaintiff continued to experience severe pain radiating down the outside of his right leg, and pain in his foot, and continued to request medical treatment.

16. Several days later, Ms. Kuhn saw Plaintiff again. Plaintiff repeated his complaints of pain, numbness, and swelling. In response, Ms. Kuhn looked at Plaintiff's toe, opined that it was gout, and prescribed him prednisone.

17. Plaintiff took the prednisone for three days. At a follow-up visit with another CHS nurse, the nurse took a photo of Plaintiff's foot. Upon information and belief, the nurse spoke with Ms. Kuhn, who prescribed Plaintiff x-rays.

18. On September 7, 2022, still in severe pain and with his foot worsening, Plaintiff filed a formal grievance (Grievance #200097972) noting that he "can't get proper care."

19. Plaintiff further explained that was "concerned that [his] pain threshold is not being understood by med. Staff here at MCSO," that he "receive[d] constant jolts of nerve pain that shoot[] through [his] body," assured MCSO that this was a real issue, and indicated that he was requesting to be seen by a doctor.

20. Several days after the September 7 grievance, Ms. Kuhn came to see Plaintiff in his housing unit and advised him that his x-rays were "fine." When Plaintiff insisted he was injured and needed to find out what the cause was, Ms. Kuhn repeated that the x-rays were "fine"—that there was "no clinical reason" why his foot was swollen. When Plaintiff asked what was happening with his foot, Ms. Kuhn shrugged her shoulders and walked away.

21. On September 10, 2022, Plaintiff filed a formal grievance (MCSO Grievance #200815022), complaining that MCSO had denied him adequate medical care: He specifically identified that he was experiencing "unbearable pain and suffering," noted that Defendant "there is no clinical reason why [his] foot is swollen," and pleaded that he "needed to be seen by an outside doctor/specialist . . . before it is too late and [his] toes have to be amputated."

22. Upon information and belief, Plaintiff's mother was also filing complaints with MCSO about Plaintiff's lack of medical treatment—speaking to a Sergeant and filing daily Health Needs Requests ("HNF") from outside the jail, on behalf of her son.

23. Upon information and belief, on September 12, 2022, a detention officer indicated to medical that Plaintiff's "foot was very swollen and painful."

24. Finally, on September 13, 2022, Plaintiff was again seen—this time by a CHS nurse named Lindsey.

25. Nurse Lindsey inspected Plaintiff's foot and identified that he was suffering from an "interdigital infection" between his toes. She cleaned the infection, wrapped it in gauze, prescribed Plaintiff antibiotics, and informed him that the dressing would need to be changed every day.

26. Plaintiff made numerous requests on September 14 and September 15 for changes of his gauze, as Nurse Lindsey had indicated. When those requests were ignored, and the dressing was not changed for days, she showed his foot to a detention officer who indicated she would put another request in for medical care.

27. At approximately 8:30 p.m. on September 15, Plaintiff was seen by another nurse. After a brief intake, Plaintiff asked when his dressing would be changed. The nurse shrugged her shoulders and advised Plaintiff she would "get to him eventually" but never changed his bandages.

28. On September 16, the third day without his dressing being changed, Plaintiff showed Detention Officer Montoya his foot, which was in severe condition. Detention Officer Montoya said he would contact medical staff immediately after finishing count. Plaintiff then filed another grievance (Grievance #202008302).

29. On September 17 and September 18, Plaintiff finally received wound care, cleaned his wound, and changed his bandages but refused his repeated requests to see a doctor.

30. On September 19, Defendant filed another grievance, noting that his "foot has gotten more swollen and I'm in pain Tylenol isn't working."

31. On September 20, Plaintiff pushed the button in his cell for emergency care and was permitted to go to medical. Once at medical, Plaintiff saw Lindsey who observed Plaintiff's foot and had Plaintiff sent to the hospital immediately.

32. Plaintiff was transported to Valleywise Medical Center in Phoenix, and underwent diagnostic testing which revealed a large clot in his right calf.

33. Plaintiff was required to undergo a six-hour surgery to remove the clot. When that was unsuccessful, he underwent a second surgery of an approximately 12-hour surgery.

34. After the two initial surgeries, Plaintiff underwent three additional surgeries.

35. After the fifth surgery, Plaintiff underwent a sixth procedure in which doctors amputate the third and fourth toes on right foot, and half of his great toe.

**FIRST CLAIM FOR RELIEF**
**42 U.S.C. § 1988 - Deliberate Indifference to Medical Needs in Violation of the 14th Amendment to the United States Constitution**
**(Against Defendant Melanie Kuhn Only)**

36. Plaintiff incorporates all prior paragraphs as if fully set forth herein.

37. The Fourteenth Amendment to the United States Constitution entitles a pretrial detainee to adequate medical care for serious medical needs.

38. Plaintiff had serious medical needs: He was experiencing extreme pain down the outside of his right leg into his right calf and right foot, and a severe infection in his foot that necessitated serious medical care.

39. Plaintiff's infection was so obvious that even a layperson would easily recognize the need for a doctor's attention.

40. Plaintiff's right-side nerve pain was sufficiently obvious that it would be evident that the failure to treat his condition could result in further significant injury or unnecessary and wanton infliction of pain.

41. A reasonable doctor or medical professional would find Plaintiff's medical conditions worthy of comment or treatment.

42. Plaintiff's medical conditions significantly affected his daily activities: He was in constant pain and could not walk without severe pain.

43. Defendant Melanie Kuhn acted with deliberate indifference to Plaintiff's serious medical need: she denied his claims of pain, sent him back to his housing unit, prescribed him merely Tylenol, failed to identify or diagnose his infection for weeks, failed to properly care for or clean his wound and dressings; and failed to otherwise secure appropriate medical care for him.

44. At the time of the above events the Fourteenth Amendment to the United States Constitution clearly established Plaintiff's right to be free from unreasonable pain and progression of medical conditions caused by a government medical provider's deliberate indifference to his medical needs.

45. At the time of the complained-of events, any government medical provider would have known that the Constitution clearly establishes this constitutional right.

46. Ms. Kuhn's actions and failures to act, as described herein, were objectively unreasonable in light of the facts and circumstances confronting her and violated Plaintiff's rights.

47. Ms. Kuhn's actions and failures to act, as described herein, were also malicious and/or involved reckless, callous, and deliberate indifference to Plaintiff's federally protected rights.

48. Ms. Kuhn engaged in the above-described conduct willfully, maliciously, in bad faith, with willful indifference to and in reckless disregard of Plaintiff's federally protected constitutional rights, and with conscious awareness that they would cause Plaintiff to suffer physical, emotional, and psychological injuries.

49. Ms. Kuhn's acts and/or omissions were moving forces behind Plaintiff's injuries, intentionally depriving him of his constitutional rights and causing him other damages.

50. Ms. Kuhn is not entitled to qualified immunity for the conduct complained of in this Complaint.

51. As a proximate result of Ms. Kuhn's unlawful and unconstitutional conduct, Plaintiff suffered injuries and other damages and losses as described herein entitling Plaintiff to compensatory, economic, consequential and special damages in an amount to be determined at trial.

52. Plaintiff is further entitled to attorneys' fees and costs pursuant to 42 U.S.C. § 1988, pre-judgment interest and costs as allowable by federal law.

53. In addition to compensatory, economic, consequential and special damages, Plaintiff is entitled to punitive damages against Ms. Kuhn under 42 U.S.C. § 1983, in that her actions were taken maliciously, willfully, or with a reckless disregard of Plaintiff's constitutional rights.

///

**SECOND CLAIM FOR RELIEF**
**42 U.S.C. § 1988 - *Monell* Liability for Unconstitutional Policy or Custom of Violating 14th Amendment to the United States Constitution**
**(Against Defendant Maricopa County only)**

54. Plaintiff incorporates the allegations in the foregoing paragraphs as if they were fully set forth herein.

55. Maricopa County has a long history of neglecting healthcare needs of pretrial detainees and inmates, as documented in lawsuits and investigations for decades.

### The *Graves* Litigation

56. In *Graves v. Penzone*, a litigated by the ACLU of Arizona, the District of Arizona ruled that unconstitutional and life-threatening conditions in jails necessitated federal oversight to ensure that the County maintained safe and humane conditions and provided the detainees basic levels of medical and mental health care. *See Graves v. Arpaio*, 48 F. Supp. 3d 1318 (9th Cir. 2010); *Graves v. Penzone*, CV-77-00479-PHX-NVW.

57. While it ultimately focused primarily in mental health care, the *Graves* judgments included screening, assessment, and treatment requirements for medical needs such as wound care.

58. The *Graves* lawsuit lasted over 40 years, and involved the County "entering into a consent decree and failing to right all their constitutional wrongs for decades," which the District Court described as a "40-year run of systematically violating Plaintiffs' constitutional rights." Doc. 2543 at p. 5 of 17.

59. As a result of the *Graves* case—and, specifically, their non-compliance with obligations assumed under the judgments—Maricopa County taxpayers were required to pay millions of dollars in the attorneys' fees and costs incurred by Plaintiffs' attorneys.

### The 65th North Group Report

60. In February 2022, the Phoenix New Times obtained a copy of an 84-page independent assessment into CHS conducted by an organization called 65th North Group,

LLC.

61. 65th North Group, LLC was "engaged by Maricopa County to conduct a Correctional Health Services (CHS) workplace environment assessment to recommend operational, organizational, and staffing improvements."

62. Although it was not an investigation into CHS's civil rights violations, the Report nonetheless identified serious failures to provide medical care to inmates, including 38 separate occasions between September and November 2021 alone in which CHS failed to administer medication to the entire jail.

63. Importantly, the Report also noted that the investigation "revealed that wound care and medication passes have been missed for up to three-days in a row."

64. The Report criticized CHS for failing to implement appropriate training and processes to ensure that nurses were able to prioritize the most emergent needs—including "wound care"—instead of leaving staff "to their own best judgment to determine what needs to get done if there is not enough time in a shift to complete all tasks."

### The Ortiz Settlement

65. On or about June 9, 2022, Maricopa County paid $11.75 million to the mother of Brian Ortiz, who was denied medical treatment for hours after he was severely beaten by another inmate.

66. In a public statement issued in response to the settlement, then- Sheriff Paul Penzone acknowledged, among other things, that the deliberate indifference that led to Mr. Ortiz's severe injuries and delay in medical care reflected an institutional deficiency: "[T]he subsequent delay in our recognition of [the assault on Mr. Ortiz] and engagement to provide aide occurred due to human *and operational shortcomings.* . . . . As the Sheriff, I will not overlook nor excuse our organizational shortcomings."

67. The disclosure of the 65th North Report and the *Ortiz* settlement occurred just months before Plaintiff was detained at the MCSO Jail.

68. As a result, the County was well-aware of the deficiencies within the jail, including staffing shortages with respect to the number of available nurses and medical personnel; deficient training of medical personnel with respect to prioritization of certain emergent medical needs; and deficient policies with respect to prioritization of emergency medical needs, at a minimum.

69. Despite its knowledge of these issues, the County—just as it had through 40 years of the *Graves* litigation—failed to address these issues, willfully disregarding the risk of serious harm to inmates due to its institutional failures.

70. The County's failures to provide sufficient medical care to its inmates, including Mr. Gavin, violated these inmates' 14th Amendment rights.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury pursuant to Fed. R. Civ. P. 38(b).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff William Gavin requests that the Court enter judgment against Defendants Maricopa County and Melanie Kuhn as follows:

a. For damages in an amount to compensate Plaintiff fully and fairly for the violations of his Constitutional Rights;

b. For general, consequential, special, and compensatory damages, including but not limited to her pain and suffering, mental anguish, emotional suffering, and loss of enjoyment of life;

c. For nominal damages as provided for by law;

d. For punitive damages against Ms. Kuhn in an amount sufficient to punish her and deter her from similar unconstitutional and unlawful conduct in the future;

e. For prejudgment interest on all liquidated sums;

f. For attorneys' fees under 42 U.S.C. §§ 1983 and 1988;

g. For Plaintiff's costs and other expenses incurred in this action; and

h. Such other and further relief as the Court deems just.

DATED this 30th day of August, 2024.

                                        THE PEOPLE'S LAW FIRM
                                        645 North 4th Avenue, Suite A
                                        Phoenix, Arizona 85003


                                        By:/s/ Stephen D. Benedetto
                                             Stephen D. Benedetto

*Attorneys for Plaintiff William Gavin*